655 P.2d 803

**Marvin SEELEY; Manuel Reyes, Petitioners-Appellants,**

v.

**STATE of Arizona, Defendant-Appellee.**

**Manuel REYES and Marvin Seeley, Appellants,**

v.

**STATE of Arizona, Appellee.**

**Nos. 1 CA–HC 59, 1 CA–CIV 6240.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 21, 1982.

Rehearing Denied Nov. 1, 1982.

Review Denied Dec. 7, 1982.

John A. Salvatore, Jr. and Alex M. Rossell, Phoenix, for petitioners-appellants.

Andy Baumert, City Atty. by George H. Bonsall, Asst. City Prosecutor, Phoenix, for defendant-appellee.

## OPINION

JACOBSON, Presiding Judge.

Two sets of issues are presented by this appeal from denials of writs of habeas corpus. The first deals with the procedural problems of petitioner having chosen habeas corpus as the vehicle to seek judicial review of the petitioner's legal contentions, and the subsequent release of the petitioner from jail. The second issue is substantive in nature and challenges the constitutionality of § 23–48.01 of the Phoenix City Code.

This matter was initiated by the petitioners-appellants, Marvin Seeley and Manuel

Reyes, filing petitions for Writs of Habeas Corpus in the Superior Court of Maricopa County, contending that the City of Phoenix ordinance under which they were being incarcerated was unconstitutional. The superior court denied relief, in essence, holding the ordinance constitutional and petitioners have appealed.

The facts are not in material dispute. On July 20, 1981, Chief of Police Ruben Ortega and Mr. Bill Reilly, Chairman of the City's Ad Hoc Committee on Public Inebriates and Transients presented two proposed ordinances for consideration of the city council. These ordinances according to the presentation made by Chief Ortega and Mr. Reilly "will assist in alleviating problems created by inebriates, transients and other people, downtown and throughout the City."

On July 21, 1981, the council passed both ordinances, which included the ordinance under attack here by adding § 23–48.01 to the city code. § 23–48.01 of the Phoenix City Code provides:

> It shall be unlawful for any person to use a public street, highway, alley, lane, parkway, sidewalk [or] other right-of-way, whether such right-of-way has been dedicated to the public in fee or by easement, for lying, sleeping or otherwise remaining in a sitting position thereon, except in the case of a physical emergency or the administration of medical assistance.

Both petitioners Seeley and Reyes were arrested on July 27, 1981, for violation of this ordinance. On July 28, 1981, both petitioners pled guilty in Phoenix Municipal Court and Seeley was sentenced to 60 days in jail and Reyes was sentenced to 90 days in jail.

In both cases, the petitioners were sitting on the public sidewalk and were arrested only after police officers had requested they move and they refused. The petitioners introduced evidence that of the 22 arrests made under this ordinance between July 23, 1981, and August 16, 1981, 73% were transients.

Chief Ortega testified that he had given instructions to field police personnel that arrests were to be made under this ordinance only if the suspect was not inebriated, did not appear to be mentally incapable, and had refused to move after being requested to do so.

In addition, Chief Ortega testified that the problems he was facing which gave rise to his requesting this ordinance was that especially in the downtown area of Phoenix, individuals sleeping in doorways and in streets and alleys, and seated on the sidewalks were causing obstructions to both pedestrians and vehicular travel and that these individuals were being subjected to sexual molestation, robbery and physical injury.

The state first contends that since habeas corpus relief only concerns itself with release of the petitioners from custody, the petitioners, by serving their sentences and being released from custody pending appeal, renders the relief requested on appeal moot and therefore this appeal should be dismissed on that basis.

As we have recently been reminded in *Fraternal Order of Police Lodge 2 v. The Phoenix Employee Relations Board,* 133 Ariz. 126, 650 P.2d 428 (1982), the doctrine of dismissal for mootness is subject to two important considerations: (1) If the issue is one of great public concern, or (2) if the issue is one which is capable of being repeated, but because of time restraints, would normally evade review, the court in its discretion may deal with the substantive issue presented. *Wise v. First National Bank of Nogales,* 49 Ariz. 146, 65 P.2d 1154 (1937); *Odle v. Imperial Ice Cream Co.,* 11 Ariz.App. 203, 463 P.2d 98 (1970).

In our opinion, this case meets both criteria for reaching the substantive issue presented. The constitutionality of this ordinance, which this record shows is being vigorously enforced by the Phoenix Police Department, is under attack. Moreover, the problems which, at least in the opinion of Chief Ortega, gave rise to this ordinance have received extensive media attention. We therefore determine that the validity of this particular ordinance is of public concern. Moreover, because of the very nature

of the ordinance, its violation will normally give rise to sentences of minimum incarceration (as the 60 day and 90 day sentences imposed here illustrate), and defendants incarcerated under the ordinance will normally be released prior to the completion of the appellate process. Thus, appellate review will be thwarted if release alone gives rise to mootness. For these reasons, although the specific relief requested by these specific petitioners has been rendered moot by the passage of time, this court elects to reach the substantive issue.

The petitioners attack the constitutionality of § 23–48.01 of the Phoenix Code on the following grounds:

(1) That it is unconstitutionally vague and overbroad;

(2) that it violates constitutional guarantees of equal protection.

(3) that it violates the constitutional right to unimpeded travel and movement; and

(4) that it is in conflict with A.R.S. § 13–2906 and therefore is an invalid exercise of the city's police power.

These contentions will be addressed in the order presented.

Petitioners first attack the ordinance on grounds of vagueness and overbreadth. While petitioners' brief treats these subjects as interchangeable, they are, in legal contemplation, separate and distinct. "Vagueness" deals with the concept that before an individual may be criminally punished, he or she must be given fair notice of what type of conduct is forbidden or required. *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). Thus, if a person of ordinary intelligence is unable to ascertain from the language of the statute what conduct will subject him to criminal penalties, the statute is unconstitutionally vague. *United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954).

Petitioners do not articulate exactly how § 23–48.01 is vague. Rather they utilize the syllogism that § 23–48.01 is in essence a "vagrancy" statute; *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) has declared "vagrancy"

ordinances invalid as unconstitutionally vague; ergo § 23–48.01 is unconstitutionally vague.

*Papachristou* dealt with a city ordinance which made illegal such conduct as being a "common night walker," "wandering or strolling around from place to place without any lawful purpose or object," "neglecting all lawful business," and "living upon the earnings of ... wives or minor children." While Justice Douglas' opinion tends to blend vagueness with the concept of overbreadth, it is clear that the type of activity proscribed by the city ordinance is such that:

> It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. Quoting *United States v. Reese,* 92 U.S. 214, 221, 23 L.Ed. 563, 566.

405 U.S. at 165, 92 S.Ct. at 845, 31 L.Ed.2d at 117.

In short, the Jacksonville ordinance lacked ascertainable standards of guilt.

■ In our opinion, the Phoenix City Ordinance does not suffer from the same malady. The conduct prohibited is clear and direct: "lying, sleeping or otherwise remaining in a sitting position" on public right-of-ways is forbidden. While the wisdom of making such conduct illegal may be questioned, the prohibition is clear. Lying, sleeping or sitting is conduct capable of being understood by any individual of normal intelligence and therefore is not vague.

■ Nor, does the qualifying clause which makes such conduct illegal "except in the case of a physical emergency or the administration of medical assistance" render the ordinance vague. The exception clause, like the conduct itself, is clear and straightforward.

■ Overbreadth deals with different constitutional considerations. The doctrine is two pronged in application. First, it requires that the state have a valid reason for

making the conduct illegal in the first place, that is, conduct cannot be made illegal at the whim of government, but rather a rational basis [1] must exist for the state action. *State ex rel Purcell v. Superior Court,* 111 Ariz. 582, 535 P.2d 1299 (1975). Second, unless constitutionally protected conduct is involved, a defendant claiming overbreadth must have standing to claim the constitutional protection. *United States v. Raines,* 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). This simply means that the factual setting in which the defendant's violation occurred, limits the scope of the inquiry as to whether the doctrine of overbreadth applies. *State v. Duran,* 118 Ariz. 239, 575 P.2d 1265 (App.1978). Thus, a defendant whose conduct is legally prohibited has no standing to complain that other types of conduct which could conceivably fall within the ambit of the statute lacks a rational basis for governmental prohibition. *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

█ We are not cited to nor are we aware of any constitutional provisions, federal or state, which protect the conduct of lying, sleeping or sitting in public right-of-ways. We therefore conclude that there only need be a rational basis for prohibiting such conduct in order to pass constitutional muster. Again, we are not concerned with the wisdom of the legislative action, but with whether a rational basis for government action exists. Chief Ortega has testified that the conduct of lying, sleeping and sitting in the public right-of-ways causes obstructions to and impedes the flow of both pedestrian and vehicular travel. Moreover, the individuals engaging in such activity are prone to being preyed upon by other members of society. Keeping the public rights-of-way free from obstruction and protecting the persons and property of a city's citizens are clearly legitimate aims of government. *Walker v. Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). Based upon the record presented

here, there exists a rational basis for prohibiting the conduct proscribed by § 23–48.01 of the Phoenix City Code and therefore the statute is not constitutionally overbroad.

█ Petitioners raise the specter that under this ordinance, people sitting on a park bench or at a bus stop or sitting in an automobile on the city's streets could be prosecuted under this ordinance. Since the petitioners' conduct (sitting on the sidewalk with their backs leaning against a building wall) clearly falls within the prohibition of the ordinance, they have no standing to complain that some other conduct may not be constitutionally prohibited. *State v. B Bar Enterprises, Inc.,* 133 Ariz. 99, 649 P.2d 978 (1982).

We therefore hold that § 23–48.01 of the Phoenix Code is not constitutionally vague or overbroad.

█ Petitioners next argue that the City's ordinance violates equal protection. The equal protection argument is premised upon the supposition that this ordinance is directed against a class consisting of "inebriates and transients." Having identified this class, the petitioners argue that the class is discriminated against by the enforcement of this ordinance. Sidestepping the issue of whether "inebriates or transients" constitute a recognizable class for the purpose of applying equal protection principles, it is clear that the ordinance on its face is constitutionally neutral. The fact that transients, because they may not have anywhere else to live, sleep or sit except on the public right-of-ways, are subjected to enforcement of the ordinance with greater frequency than residents of the community does not result in unconstitutional discrimination. There is no indication in this record that non-residents or inebriates are singled out for prosecution under this ordinance. In fact, persons who are intoxicated are not charged with violation of this ordinance under Chief Ortega's guidelines. Intoxicated individuals under

---

1. This rational basis rises to a "compelling state interest" when constitutionally protected conduct is sought to be prohibited. *Roe v.*

*Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

268

the guidelines are turned over to the Local Alcohol Rehabilitation Center (LARC). The record does not support a claim of unconstitutional discrimination and therefore is distinguishable from *Parr v. Municipal Court for Monterey-Carmel Judicial District of Monterey County,* 3 Cal.3d 861, 92 Cal.Rptr. 153, 479 P.2d 353 (1971), *cert. denied,* 404 U.S. 869, 92 S.Ct. 46, 30 L.Ed.2d 113 (1971) (an ordinance directed by its preamble against the "influx of undesirables and unsanitary visitors . . . known as 'hippies' ").

■ Petitioners next argue that this city ordinance violates the "constitutional rights to travel and freedom of movement." Petitioners' brief goes to some lengths to convince this court that there exists a constitutional right to travel, but fails to address, analytically, whether assuming such constitutional rights exist, how this ordinance infringes on such rights. As previously indicated, this statute is neutral in its application to residents or nonresidents. Moreover, the tenor of the statute is not to prohibit movement, but to encourage it. It is the sedentary activities of "lying, sleeping and sitting" which are prohibited. In fact, under this record, if the potential defendant moves upon request there is no arrest.

As with the equal protection argument, this record is simply inadequate to show that the concentrated efforts of the Phoenix Police Department in enforcing this ordinance only against non-residents has "chilled" the influx of visitors to the city. We find no merit in this argument.

■ Petitioners finally contend that since the state legislature has enacted a state statute, A.R.S. § 13–2906 [2] dealing with obstruction of highways and other public thoroughfares, the city is prohibited from legislating in the same area. Petitioners argue that because the city ordinance and the state statute "conflict," the city

ordinance must fail, citing *State ex rel. Baumert v. Municipal Court of the City of Phoenix,* 124 Ariz. 159, 602 P.2d 827 (App. 1979). The problem, of course, is that the two enactments do not conflict. The statute is concerned with a person who *"recklessly* interferes with the passage of any highway or public thoroughfare by creating *unreasonable* inconvenience or hazard." The city ordinance is concerned with "lying, sleeping or sitting" upon a public right-of-way. The conduct prohibited under each enactment is separate and distinct. Finding no conflict, *State ex rel. Baumert* is inapplicable.

For the foregoing reasons, the judgment of the trial court denying the petitions for Writs of Habeas Corpus is affirmed.

CORCORAN and EUBANK, JJ., concur.

---

2. § 13–2906. Obstructing a highway or other public thoroughfare; classification
   A. A person commits obstructing a highway or other public thoroughfare if, having no legal privilege to do so, such person, alone or with

other persons, recklessly interferes with the passage of any highway or public thoroughfare by creating an unreasonable inconvenience or hazard.