Charles WHITING, III, et al., Plaintiffs,

v.

**TOWN OF WESTERLY, et al., Defendants.**

Civ. A. No. 89–347B.

United States District Court,
D. Rhode Island.

June 29, 1990.

Gary Berkowitz, Pawtucket, R.I., Lynette Labinger, Providence, R.I., for plaintiffs.

Maureen McKenna Goldberg, Pawtucket, R.I., for defendants.

## OPINION

FRANCIS J. BOYLE, Chief Judge.

Plaintiffs, a certified class, contest the constitutional validity of a Town of Westerly ordinance. Section 19–2 of the Ordinances of the Town of Westerly forbids sleeping in the nighttime in any motor vehicle of any description parked in either a public or semi-public area or upon the grounds of any person in the town.[1] Section 19–3 of the ordinances prohibits sleeping in the nighttime out-of-doors in any public or semi-public area or on the grounds of any person in the town. A penalty of up to twenty (20) dollars is imposed.

Plaintiffs contend that:

1. the ordinance on its face is unconstitutionally overbroad and vague, and

2. that the ordinance, as applied to persons who are not Rhode Island residents, violates the Equal Protection Clause of the fourteenth amendment.

### FACTS [2]

Memorial Day weekend of each year generally signifies the "opening" of beach areas in Rhode Island. Beachgoers prepare for the season by dusting off their beach umbrellas, coolers, and blankets, while children search frantically for their beach pails and shovels, put away at the close of the previous summer. The Westerly Police Department, however, prepares for the beach season in a different manner. Each year between Memorial Day weekend and Labor Day weekend, the Westerly Police Department organizes a detachment of police officers known as the "Beach Patrol" which patrols the Misquamicut Beach area in Westerly, Rhode Island. One purpose of the Beach Patrol is to enforce the challenged ordinances.

On Memorial Day weekend in 1988, plaintiff Charles Whiting, a citizen of Connecticut, travelled to Westerly with a friend intending to stay a day or so and enjoy the beach and other activities. They had no hotel or motel reservations. They tried to rent a room at one hotel near the beach area but there were no vacancies. They did not look beyond the beach area because Mr. Whiting, having consumed alcohol, thought it best not to drive. By 9:30 p.m., the two had decided to spend the night in the back of Mr. Whiting's Chevrolet Blazer Pick–Up Truck, in the "Andrea" parking lot in Westerly.

At approximately 3:30 a.m. on May 30, 1988, Westerly police arrested Mr. Whiting and charged him with violating section 19–2. The police transported Mr. Whiting to the Westerly Police Station and detained him for at least five hours. Later that same morning, he was brought before Justice of the Peace John Adamo and signed a document granting Mr. Adamo power of attorney to enter a plea of guilty or nolo

---

1. The challenged ordinance, provides:

**Sec. 19–2. Sleeping in public—In motor vehicles.**

It shall be unlawful for any person to sleep in the nighttime in any motor vehicle of any description parked on any highway, public beach, parking lot, picnic grounds, or on any other public, or semipublic area; or in any motor vehicle of any description parked upon the grounds of any other person in the town; or for any reason to aid, assist, encourage or promote the same to be done by any other person.

**Sec. 19–3. Same—Out-of-doors.**

It shall be unlawful for any person to sleep in the nighttime on any highway, public beach, parking lot, picnic ground, or on any other public or semipublic area, or upon the grounds of any other person in the town; or for any person to aid, assist, encourage or promote the same to be done by any other person.

2. The parties have filed a statement of stipulated facts.

contendere on his behalf.[3] Mr. Whiting paid Mr. Adamo twenty (20) dollars cash for bail and fifteen (15) dollars cash for Mr. Adamo's appearance as a Justice of the Peace. He was then released from custody.

On May 31, 1988, Mr. Adamo appeared on behalf of Mr. Whiting in Fourth Division District Court and entered a plea of nolo contendere. Mr. Whiting was adjudged guilty and the case was filed pursuant to state law.[4]

On Fourth of July weekend in 1988, Eric Anderson and a friend travelled to Westerly planning to camp at a campsite for the holiday weekend. Upon arriving, Anderson spoke to a local shopowner who told him he would not find any campsites or any other lodging in Westerly. Based upon this information, Mr. Anderson looked no further for public accommodations. At least once, Mr. Anderson attempted to secure private accommodations at a trailer park owned by a friend, but to no avail.

Sometime after 1:00 a.m. on July 3, 1988, Mr. Anderson parked his van in the Misquamicut Beach parking lot in Westerly, and went to sleep on a mattress in the van. At approximately 3:30 a.m., Westerly police arrested Mr. Anderson and charged him with violating section 19–2 of the town code. He was then transported to the Westerly Police Station and detained for several hours. Save for appearing before a different Justice of the Peace, Santo Turano, and paying twenty-five (25) dollars for Mr. Turano's appearance as a Justice of the Peace, the disposition of Mr. Anderson's case travelled the same path as Mr. Whiting's case.

The parties have stipulated that the stated purpose of the challenged ordinance is the "protection of public peace and health and safety." In addition, the parties agree to the following statistics:

—In 1987, 170 persons were arrested under the challenged ordinance. Of those, 15 were from Rhode Island, with the remainder from out of state. 11 of the Rhode Islanders were given summonses and released. Of the 155 nonresidents, all but two executed the power of attorney before the Justice of the Peace.

—In 1988, 82 persons were arrested under the challenged ordinance. Of those, 14 were from Rhode Island. All but two Rhode Islanders were given summonses. All of the nonresidents executed the power of attorney before the Justice of the Peace, except for one individual ultimately charged with simple assault as well.

—As of May 30, 1989, 16 persons were arrested under the challenged ordinance. All were from Connecticut. All executed the power of attorney before the Justice of the Peace.

Plaintiffs' complaint alleges that the ordinance on its face is unconstitutionally overbroad and vague. In addition, Plaintiffs contend that the ordinance as applied to persons who are not residents of the State of Rhode Island is unconstitutional under the Equal Protection Clause of the fourteenth amendment. Plaintiffs seek declaratory and injunctive relief.

## OVERBREADTH AND VAGUENESS

Each of the named Plaintiffs in this action went to the Town of Westerly to enjoy a recreational weekend. Neither of the Plaintiffs had beforehand sought a place to provide an evenings rest. Each sought ac-

---

**3.** Section 12–21–21 of the General Laws of Rhode Island provides in pertinent part:

Whenever any person who is charged with the commission of a misdemeanor punishable by a fine shall be without the confines of this state, said defendant may, ... by instrument in writing and duly acknowledged before an appropriate officer, authorize his attorney of record.... [to] enter on his behalf a plea of guilty or nolo contendere, and to pay such fine imposed by the court.... R.I.Gen.Laws § 12–21–21 (1981).

**4.** Section 12–10–12 of the General Laws of Rhode Island provide in pertinent part:

... [A]ny judge of the district court ... may place on file any complaint in a criminal case other than the complaint for the commission of a felony.... If no action is taken on said complaint for a period of one (1) year following said filing, said complaint shall be automatically quashed and destroyed. All records relating to said complaint shall be expunged ... [and] [n]o criminal record shall result therefrom.... R.I.Gen.Laws § 12–10–12 (1989 Supp.).

commodations and, after a limited effort, found them unavailable. They now contend that the Constitution of the United States provides them with an assurance of an evening's lodging in Westerly.

There are two issues.

■ I. Whether the enactment is overbroad is the first issue. In considering a facial overbreadth and vagueness challenge, the Court must determine whether the enactment reaches a substantial amount of constitutionally protected conduct. *Boos v. Barry*, 485 U.S. 312, 329, 108 S.Ct. 1157, 1167–68, 99 L.Ed.2d 333 (1988); *Houston v. Hill*, 482 U.S. 451, 458–59, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398 (1987); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). The Court must consider the text of the enactment as well as any limiting constructions the enforcement agency has proffered. *Barry*, 485 U.S. at 329, 108 S.Ct. at 1167–68; *Kolender v. Lawson*, 461 U.S. 352, 355, 103 S.Ct. 1855, 1857, 75 L.Ed.2d 903 (1983); *Hoffman Estates*, 455 U.S. at 494 n. 5, 102 S.Ct. at 1191; *Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972). If the law does not reach a substantial amount of constitutionally protected conduct, then the overbreadth challenge fails. *Hoffman Estates*, 455 U.S. at 494, 102 S.Ct. at 1191.

■ II. Next, the Court considers the facial vagueness challenge and, if the law implicates no constitutionally protected conduct, the challenge should be upheld only if the law is impermissibly vague in all of its applications. *Id.* at 495, 102 S.Ct. at 1191. As the court in *Hoffman Estates* stated, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's

conduct before analyzing other hypothetical applications of the law." *Id.*[5]

Plaintiffs do not challenge the ordinance in question on First Amendment grounds. They have made no claim that their sleeping constituted expressive conduct necessarily implicating some First Amendment protection. Rather, Plaintiffs contend that the mere act of sleeping in a public place, without more, is constitutionally protected conduct.

■ The act of sleeping in a public place, without more, is not constitutionally protected conduct. Indeed, the conduct in question involves travelling to Westerly, making some limited attempt if any to secure lodging for the evening, and lacking success, camping at the beach in one's motor vehicle overnight. Merely sleeping in a public place, absent expressive conduct, is not constitutionally protected activity. *Hershey v. City of Clearwater*, 834 F.2d 937, 940 n. 5 (11th Cir.1987); *People v. Davenport*, 222 Cal.Rptr. 736, 738, 176 Cal. App.3d Supp. 10, 13 (Cal.App.Dep't Super. Ct.1985), *cert. denied*, 475 U.S. 1141, 106 S.Ct. 1794, 90 L.Ed.2d 339 (1986); *see also Seeley v. State*, 134 Ariz. 263, 267, 655 P.2d 803, 807 (App.1982). Because the Westerly ordinance does not reach a substantial amount of constitutionally protected conduct, Plaintiffs' overbreadth challenge fails.

Plaintiffs predicate their attacks in part upon *Hershey v. City of Clearwater*, 834 F.2d 937 (11th Cir.1987). This reliance is misplaced. Although appearing initially to support Plaintiffs' assertions, the *Hershey* decision specifically points out that the sleeping prohibited in the ordinance challenged in that case "appears to be 'of the general kind, which enjoys no peculiar constitutional advantage.'" *Id.* at 940 n. 5 (quoting *People v. Davenport*, 222 Cal. Rptr. 736, 738, 176 Cal.App.3d Supp. 10, 13

5. The court went on to hold that "[v]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *Hoffman Estates*, 455 U.S. at 495 n. 7, 102 S.Ct. at 1191 n. 7 (quoting *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706

(1975)). Moreover "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Hoffman Estates*, 455 U.S. at 495 n. 7, 102 S.Ct. at 1191 n. 7 (quoting *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974)).

(Cal.App.Dep't Super.Ct.1985), *cert. denied*, 475 U.S. 1141, 106 S.Ct. 1794, 90 L.Ed.2d 339 (1986)). The court concluded that the overbreadth challenge in that case "would probably fail because the City of Clearwater ordinance *did not* reach a substantial amount of constitutionally protected activity" and "probably reached no constitutionally protected conduct at all." *Hershey*, 834 F.2d at 940 n. 5. (emphasis added).

■ Plaintiffs' facial vagueness challenge also must fail for two reasons. First, Plaintiffs have engaged in conduct which the ordinance clearly proscribes. As mentioned, vagueness challenges that do not involve the first amendment must be considered in light of the facts at hand. As the Court in *Hoffman Estates* concluded:

> "... the complainant must prove that the enactment is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'"

455 U.S. at 495 n. 7, 102 S.Ct. at 1191 n. 7. Accordingly, the complainants' conduct must be examined apart from hypothetical applications of the enactment. *Id.* at 495, 102 S.Ct. at 1191.

Plaintiffs were arrested for sleeping in the nighttime in their motor vehicles in a public place. Plaintiffs testified at trial that they failed to or could not secure lodging for the night and, as a result, used their motor vehicles for lodging. These acts are specifically proscribed by the challenged ordinance and are clearly, obviously, and unquestionably acts not unduly vague. Section 19–2 of the ordinance plainly sets forth a standard of conduct which is proscribed. Namely, it is unlawful for any person to sleep in the nighttime in their motor vehicle on public or semipublic grounds. Plaintiffs Whiting and Anderson, by their own testimony, did exactly that. Since the ordinance clearly applies to their conduct, they may not now complain that the ordinance is otherwise unconstitutionally vague. Likewise, Plaintiffs cannot argue that the enactment is vague as applied to the conduct of other hypothetical third parties. Accordingly, Plaintiffs' vagueness challenge must fail.

Second, a limiting construction is proffered by the Town, thereby removing any risk that the ordinance is unduly vague. The ordinance in question is intended to stop people from "lodging" on the beaches or using their automobiles as living quarters without basic sanitary facilities. Sleeping under these circumstances means "lodging" or "camping out" for the night. The named Plaintiffs intended precisely to use a motor vehicle parked in a public place to provide an evening's lodging. Defendant has introduced evidence that the ordinance's focus is on overnight lodgers, not the "tired child asleep in the car seat." Indeed, only persons found using their automobiles or the Town's beaches as living quarters in the nighttime are arrested. The limiting construction articulated by the Town could be placed on the term "sleep", thereby removing potential vagueness problems. *See Hershey*, 834 F.2d at 940 n. 5. Accordingly, after the limiting construction, the ordinance gives clear notice of what is proscribed; namely, persons may not use their motor vehicles on public or semi-public property in the nighttime as living accommodations.

The articulated purpose of this ordinance is the protection of the public peace, health, and safety. By preventing persons from camping on Westerly's beaches and parking lots, without proper amenities and sanitary facilities, the Town protects important governmental interests. Thus, the ordinance withstands constitutional scrutiny as a valid exercise of the Town's police powers. *Cf. Clark v. Community for Creative Non-violence*, 468 U.S. 288, 294–95, 104 S.Ct. 3065, 3069–70, 82 L.Ed.2d 221 (1984); *Hershey*, 834 F.2d at 940.

### EQUAL PROTECTION

Plaintiffs next contend that the ordinance, as applied to nonresidents of Rhode Island, violates the Equal Protection Clause of the fourteenth amendment.

The Equal Protection Clause of the fourteenth amendment to the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. Simply, this means that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982); *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982); *Rinaldi v. Yeager,* 384 U.S. 305, 309, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1966); *Tigner v. Texas,* 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940); *see also Bishop v. Moran,* 676 F.Supp. 416, 421 (D.R.I.1987). As the Supreme Court stated in *Plyler v. Doe:*

> The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States. A legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill. In applying the Equal Protection Clause to most forms of state action, we thus seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose.

457 U.S. at 216, 102 S.Ct. at 2394; *see also Zobel v. Williams,* 457 U.S. 55, 60, 102 S.Ct. 2309, 2312, 72 L.Ed.2d 672 (1983); *Rinaldi v. Yeager,* 384 U.S. at 308–09, 86 S.Ct. at 1499.

■ It is well settled that absent a classification interfering with the exercise of a fundamental right or disadvantageous to a suspect class, a challenged statute need only be rationally related to a legitimate governmental concern. *Kadrmas v. Dickinson Public School,* 487 U.S. 450, 457–58, 108 S.Ct. 2481, 2486–87, 101 L.Ed.2d 399 (1988); *Lyng v. UAW,* 485 U.S. 360, 370, 108 S.Ct. 1184, 1191–92, 99 L.Ed.2d 380 (1988); *Plyler v. Doe,* 457 U.S. at 216, 102 S.Ct. at 2394; *Cleburne* 473 U.S. at 440, 105 S.Ct. at 3249; *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); *San Antonio School Dist. v. Rodriguez,* 411 U.S. 1, 16–17, 93 S.Ct. 1278, 1287–88, 36 L.Ed.2d 16 (1973); *Rinaldi v. Yeager,* 384 U.S. 305, 309, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1965); *see also Montalvo–Huertas v. Riveria–Cruz,* 885 F.2d 971, 976 (1st Cir.1989); *Dickerson v. Latessa,* 872 F.2d 1116, 1119 (1st Cir. 1989); *Bauza v. Morales Carrion,* 578 F.2d 447, 450 (1st Cir.1978); *Bishop v. Moran,* 676 F.Supp. at 421. Thus, legislative classifications are presumptively constitutional. *Lyng,* 485 U.S. at 370, 108 S.Ct. at 1191–92; *Cleburne,* 473 U.S. at 440, 105 S.Ct. at 3249; *Murgia,* 427 U.S. at 314, 96 S.Ct. at 2567.

■ As a preliminary matter, it is evident that the ordinance in question involves neither a suspect classification nor a fundamental right. As mentioned, the sleeping here involves no expressive conduct and appears to be "of the general kind." *Hershey,* 834 F.2d at 940 n. 5. The ordinance should thus be examined in light of the rational basis test. Specifically, the issue is whether the way in which Westerly enforces the challenged ordinance against nonresidents of Rhode Island is rationally related to some legitimate Town interest.

■ Plaintiffs allege that the Town ordinance is enforced in an unconstitutional manner that discriminates against out-of-state residents. They contend that because Rhode Island residents are given a summons (after signing an agreement to appear in court to answer the charge) after arrest and out-of-state residents are incarcerated and given the choice of pleading nolo contendere or guilty and being released or remaining in jail until arraignment by a magistrate on the next court date, the ordinance as applied to nonresidents violates the Equal Protection Clause.

Plaintiffs do not attack the constitutionality of the Rhode Island statutes which empower peace officers to issue, at their discretion, a summons or to arrest a person for committing a misdemeanor. *See* R.I. Gen.Laws §§ 12–7–11, 12–7–12 (1956). Rather, the focus of their attack is on the manner in which the Town enforces its ordinances. Basically, they argue that Rhode Island residents and out-of-state residents are similarly situated for bail purposes and thus should be treated alike.

Rhode Island and out-of-state residents are not similarly situated for bail purposes and the distinction which the Town makes between the two groups is rationally related to the Town's legitimate interest in ensuring that out-of-state residents appear before a magistrate for bail. The Town asserts that all persons, residents of Rhode Island or otherwise, found sleeping or lodging on the beaches or in their motor vehicles, are arrested and charged with violating the Town ordinance. The inquiry is whether out-of-state residents, once arrested, may be treated differently than Rhode Island residents. The Town does have a legitimate if not compelling reason for ensuring that nonresidents appear for bail. As Defendant argues, if a nonresident were issued a summons and failed to appear in court, the Town would be totally powerless to arrest the person unless that person returned to Rhode Island. On the other hand, Rhode Island residents are clearly within the reach of the Town or State Police for a failure to appear after being summoned. There is a critical distinction which places nonresidents of Rhode Island and residents of Rhode Island in dissimilar positions for bail purposes: The Town does not have jurisdiction over out-of-state residents when they leave Rhode Island, while it does have jurisdiction over Rhode Island residents. This difference places residents and nonresidents in remarkably different positions for bail purposes. The Town's enforcement of the challenged ordinance does not violate equal protection, because the method of enforcement is reasonably and rationally related to the Town's important interest in ensuring that persons committing misdemeanors within the Town appear for bail at a later date.

### CONCLUSION

Because the challenged ordinance does not reach a substantial amount of constitutionally protected conduct, Plaintiffs' overbreadth challenge fails. Moreover, because Plaintiffs' conduct is of the kind which the challenged ordinance clearly proscribes, and because the town has articulated a limiting construction, the ordinance is not void for vagueness. Finally, because there is a legitimate Town interest for treating out-of-state residents differently for bail purposes, the Town's enforcement of the ordinance does not violate the Equal Protection Clause. Accordingly, judgment is entered for the Defendants for costs.