**Fred DAVISON, et al., Plaintiffs,**

v.

**CITY OF TUCSON and Tucson City Council, Defendants.**

**No. CIV 96–151 TUC WDB.**

United States District Court, D. Arizona.

March 13, 1996.

---

990

Paul Joseph Gattone, Southern Arizona People's Law Center, Tucson, AZ, for plaintiffs.

Thomas J. Berning, Tucson City Attorney, Dennis Patrick McLaughlin, Tucson, AZ, for defendants.

## ORDER

WILLIAM D. BROWNING, District Judge.

Pending before the Court is Plaintiffs' March 8, 1996 Motion for Preliminary Injunction.[1] The Court having reviewed the parties' briefs and oral arguments, the motion is denied.

### Findings of Fact

Pursuant to Federal Rule of Civil Procedure 52(a), the Court relies on the following undisputed facts.[2] An encampment of homeless persons exists at the base of A–Mountain in Tucson, Arizona. Some or all of the named plaintiffs in this action live in the encampment. Located entirely on city-owned property, the encampment has existed at the base of A–Mountain for roughly ten years. During this time, law enforcement and other city officials have been aware of the encampment and at least until now have not engaged in a concerted effort to remove it.

On March 4, 1996, the defendant Tucson City Council, in a 4–3 vote, passed Resolution Number SS/MARCH4–96–102, entitled "A–Mountain Homeless Campground and Other Homeless Encampments (City–Wide)." The Resolution provides:

1. That the Community Services Department, in coordination with other appropriate City departments, work with persons currently camping on City property to inform them of all sources available to assist them in finding employment and housing.

2. That appropriate City officials provide a minimum of 72 hours notice to persons illegally camping on City property that they will need to vacate that property or else face enforcement action.

3. That after the City has provided notice, and if individuals do not vacate City property on which they are illegally camping, that the Tucson Police Department take appropriate enforcement action for violation of the State trespassing statutes.

It is further undisputed that the Resolution is expected to catalyze the termination of the encampment in the near future.

The City has legitimate interests in terms of crime prevention, health and sanitation, exposure to legal liability, and the use of fire and open flames for heating and cooking in an uncontrolled environment. There are also health concerns as a result of the A–Mountain encampment being sited on a methane-emitting landfill.

On March 8, 1996, Plaintiffs filed this action, challenging the Resolution as unconstitutional. They have requested class certification, with the potential class including all homeless individuals who "perform involuntary, life sustaining activities on public property within the City of Tucson." Complaint ¶ 5. The complaint alleges that the Defendants' actions violate the Eighth Amendment prohibition against cruel and unusual punishment as well as the Fourteenth Amendment guarantee of equal protection.[3]

### Conclusions of Law

Pursuant to Federal Rule of Civil Procedure 52(a), the Court sets forth its conclusions of law.

#### a. Standard for a Preliminary Injunction

 The Ninth Circuit employs alternative standards in evaluating the propriety of

---

1. The motion was originally filed as a motion for temporary restraining order. Since Defendants have received notice and a hearing, however, the motion is more appropriately treated as a motion for preliminary injunction. *See Maine Cent. R.R. v. Brotherhood of Maintenance,* 652 F.Supp. 40, 41 n. 1 (D.Me.1986).

2. The parties advised the Court at oral argument that the outcome of this action may turn solely on questions of law. Since most if not all of the operative facts are not in dispute, the parties anticipate conducting little or no fact discovery.

3. In their memorandum in support of the injunctive relief application, Plaintiffs argue that Defendants' action also violates Plaintiffs' Fourth Amendment protection against unreasonable searches and seizures. The Court will not reach this issue inasmuch as this argument is not found in the complaint. Moreover, Plaintiffs' counsel did not address this issue during oral argument, thereby abandoning it. The Court further notes that counsel invoked at oral argument a potential due process claim. Since the complaint is silent on that ground as well, however, the Court will not address it.

interim injunctive relief. The first standard requires a district court to weigh: (1) whether the moving party will suffer irreparable injury if the relief is denied; (2) whether the moving party will probably prevail on the merits; (3) whether the balance of the potential harms favors the moving party; and, depending on the nature of the case, (4) whether public interest favors granting relief. *International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir.1993). Under the alternative standard, the moving party satisfies its burden by demonstrating *either:* (1) a combination of probable success on the merits and the possibility of irreparable injury if relief is not granted; *or* (2) the existence of serious questions going to the merits and the balance of hardships tips sharply in the movant's favor. *Id.* "The alternative standards 'are not separate tests but the outer reaches of a single continuum.'" *Id.* (quoting *Regents of Univ. of Cal. v. American Broadcasting Cos.*, 747 F.2d 511, 515 (9th Cir.1984)). In essence, the district court's role is to exercise its discretion in balancing the equities of the situation. *Id.*

### b. Analysis

The Court acknowledges the profoundly sad plight of the homeless. Homelessness is a sensitive and emotionally-charged issue, and one that inspires passionate and often vituperative debate. The destitution of the homeless is sobering, and clearly is a societal problem demanding attention. The image of homeless men and women huddled on steam grates or under highway bridges is not easily forgotten. Moreover, the threat of irreparable injury to Plaintiffs in the instant case is haunting and undeniable. The specter of losing one's domicile, however primitive, is deeply troubling.

It is not, however, the role of the Court to pass on the wisdom or humaneness of the Defendants' planned action. The Court's limited role in this litigation, rather, is to determine only whether Defendants have exceeded the limitations on their power imposed by the federal constitution. A bedrock principle of the American system of justice is that the Constitution is not trumped by sympathy or bias. The Court is not at liberty to ignore or rewrite the Constitution, nor engraft upon it rights that it does not afford. Although careful and searching, the Court's review of the constitutionality of Defendants' action must be dispassionate.

Plaintiffs invoke the Constitution of the United States to establish a right to occupy public lands in contravention of the governmental body owning said lands. There is no such constitutional right. The very Constitution that protects Plaintiffs from authoritarian abuse protects others injured by Plaintiffs' continued occupation of said lands.

In addition, Plaintiffs argue that because they have been on the land for several years with the "acquiescence" or "tacit approval" of the City, they are now entitled to some sort of possessory right to remain there. The Court is aware of no such right nor was Plaintiffs' counsel able to cite the Court to any such right.

Returning to the controlling standards for deciding whether to grant the injunctive relief requested, the Court notes that the element shared by all three standards is the movant's probability of success on the merits. To grant the preliminary injunction that Plaintiffs seek, this Court must conclude that Plaintiffs *probably*—not merely *possibly*—will prevail on the merits. Under current Eighth Amendment and equal protection jurisprudence, this is a conclusion the Court simply cannot draw.

### 1. Eighth Amendment Claim

The Eighth Amendment protection against cruel and unusual punishment can only be invoked by persons convicted of crimes. *See, e.g., Johnson v. City of Dallas,* 61 F.3d 442, 444 (5th Cir.1995); *D'Aguanno v. Gallagher,* 50 F.3d 877, 879 n. 2 (11th Cir.1995) (citing *Whitley v. Albers,* 475 U.S. 312, 317–18, 106 S.Ct. 1078, 1083–84, 89 L.Ed.2d 251 (1986)); *see also Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) ("An examination of the history of the [Eighth] Amendment and the decisions of this Court construing the prohibition against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes."). Thus, since no

named plaintiff has been convicted under the trespass statute for staying at the A–Mountain encampment, Plaintiffs lack standing to raise this argument. Accordingly, Plaintiffs cannot meet their burden of proving probable success on the merits of their Eighth Amendment claim.[4]

### 2. Equal Protection Claims

Plaintiffs allege that Defendants violated their right to equal protection in two ways:

1. By discriminating against the homeless class in selectively enforcing criminal trespass laws; and

2. By violating the fundamental right to travel.

■ Neither argument is likely to succeed on its merits. First, no court has ever held the homeless to be a suspect class. On the contrary, the circuits that have addressed the issue are in accord that the homeless are not a suspect class. *D'Aguanno*, 50 F.3d at 879 n. 2; *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1269 n. 36 (3rd Cir.1992). Although the U.S. Supreme Court has not directly answered this question, the high court has ruled that classifications based on wealth, *Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988), or housing, *Lindsey v. Normet*, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), are not "suspect." Accordingly, the level of scrutiny to be applied to government action that discriminates on the basis of homelessness is rational review. Given the City's concerns about crime, sanitation, aesthetics, and homeless individuals' use of fire, the Court would be hard-pressed to decide that the Defendants' action could not withstand this relatively relaxed constitutional scrutiny. Thus, the Court cannot conclude that Plaintiffs are likely to prevail on the merits of their classification-based equal protection argument.

■ The right to travel argument is not altogether new in litigation involving the homeless. It is well-established that if government action infringes upon the fundamen-

tal right to interstate travel, the action may be sustained only if it passes strict scrutiny, *i.e.* compelling state interest and least restrictive means. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The right to travel generally arises in the context of residency duration requirements imposed by states to discourage the immigration of indigents. *See, e.g., Joyce v. City and County of San Francisco*, 846 F.Supp. 843, 860–61 (N.D.Cal.1994); *Tobe v. City of Santa Ana*, 892 P.2d 1145, 1162–63 (1995).

■ Nonetheless, at least one federal district court has held that enforcing a homeless ordinance similar to the one presented in the instant case effectively burdens the homeless person's right to travel, especially when the individual has no place to go. *Pottinger v. City of Miami*, 810 F.Supp. 1551, 1579–83 (S.D.Fla.1992). This result has been rejected, however, in at least four other cases. *See Roulette v. City of Seattle*, 850 F.Supp. 1442, 1447–48 (W.D.Wash.1994); *Joyce*, 846 F.Supp. at 860; *Tobe*, 892 P.2d at 1165; *Seeley v. State*, 134 Ariz. 263, 655 P.2d 803 (App.1982).

In all likelihood, the fundamental right to interstate travel is not implicated in the instant case. The Defendants' action does not impede the travel of any of the named plaintiffs because they do not seek to *travel* anywhere; they seek only to remain. As the California Supreme Court stated in *Tobe:*

> The right to travel does not ... endow citizens with a "right to live or stay where one will." While an individual may travel where he will and remain in a chosen location, that constitutional guaranty does not confer immunity against local trespass laws and does not create a right to remain without regard to the ownership of the property on which he chooses to live or stay, be it public or privately owned property.

892 P.2d at 1165. For these reasons, the Court concludes that Plaintiffs have not car-

---

4. In reaching this conclusion, the Court specifically rejects the contrary holding of *Pottinger v.*

*City of Miami*, 810 F.Supp. 1551 (S.D.Fla.1992).

ried their burden of proving probable success on the merits of their right to travel claim.

### Conclusion

The Court cannot conclude that Plaintiffs are likely to prevail on the merits of any of the claims raised in the Complaint. Injunctive relief, therefore, is not now warranted.

Accordingly, IT IS **ORDERED** that Plaintiffs' March 8, 1996 Motion for Preliminary Injunction is **DENIED.** IT IS FURTHER **ORDERED** that the parties shall have thirty (30) days from the filing date of this Order in which to conduct discovery. IT IS FURTHER **ORDERED** that the parties shall have fifteen (15) days following the close of discovery in which to file dispositive motions.