Megan S. ROULETTE; Seattle–King County Coalition for the Homeless; Operation Homestead; Seattle Housing Action Resource Effort; Seattle Displacement Coalition; Brian Wojcik; Reginald E. Pygum; Jules H. Richard; Larry Gill; Joyce Quill; Leslie Soderberg; Jesse Petrich; Seattle Chapter, National Organization for Women; Freedom Socialist Party; Jonny Hahn; Seattle Women Act For Peace; Fellowship of Reconciliation, Seattle Chapter, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

CITY OF SEATTLE, a municipal corporation; Norman B. Rice, Mayor of the City of Seattle; and Patrick S. Fitzsimmons, Chief of Police for the City of Seattle, Defendants.

No. C93–1554R.

United States District Court, W.D. Washington.

March 10, 1994.

David B. Girard, Evergreen Legal Services, Robert Dana Adelman, Seattle, WA, for Megan Roulette, Operation Homestead, Seattle Housing Action Resource Effort, Seattle Displacement Coalition, Seattle King County Coalition for the Homeless, Brian Wojcik, Reginald E. Pygum, Jules H. Richard, Larry Gill, Joyce Quill, Leslie Soderberg.

Beth Marie Andrus, Miller, Nash, Wiener, Hager & Carlsen, Seattle, WA, for Jesse

Petrich, Seattle Women Act for Peace, Fellowship of Reconciliation, Seattle Chapter, National Organization for Women, Seattle Chapter.

David Zuckerman, Seattle, WA, for Freedom Socialist Party, Jonny Hahn.

Sandra L. Cohen, Gary E. Keese, Seattle City Atty's. Office, Seattle, WA, for city of Seattle, Norman Rice, Patrick S. Fitzsimons.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' CROSS–MOTION FOR SUMMARY JUDGMENT

ROTHSTEIN, Chief Judge.

### I. INTRODUCTION

Plaintiffs in this case are a diverse group composed of homeless people, individuals and organizations providing services to and advocating for the homeless, political, social and community organizations in Seattle, a registrar of voters, and a street musician. This coalition joined forces to challenge the constitutionality of two ordinances recently enacted by the Seattle City Council. Defendants include the City of Seattle, the mayor of Seattle, Norman B. Rice, and the former Seattle police chief, Patrick S. Fitzsimmons (hereafter collectively referred to as "the City").

The challenged ordinances are SMC §§ 15.48.040–050, which prohibits sitting or lying on public sidewalks in commercial areas during certain hours (hereafter "the sidewalk ordinance"), and SMC § 12A.12.015, as amended, which prohibits "aggressive begging." Plaintiffs now move for summary judgment declaring both ordinances unconstitutional; the City has responded with a cross-motion for summary judgment on the constitutional validity of both ordinances.

The issues raised by these cross-motions highlight the compelling concerns motivating both the supporters and the opponents of these ordinances. By enacting this legislation, the City was attempting to protect the safety and welfare of its citizens. On the other hand, plaintiffs' constitutional claims raise important questions about whether the City's legislative efforts tread upon fundamental rights. Therefore, great caution is necessary; efforts to address legitimate local concerns must be carefully confined so as not to unconstitutionally encroach on individual rights. Whether the City's legislation is properly within constitutional confines depends on the language of the particular ordinance. The court concludes that, subject to the limitations set forth below, the ordinances in question are constitutional.

### II. THE SIDEWALK ORDINANCE

#### A. Background

Subject to limited exceptions, SMC §§ 15.-48.040–.050, hereafter referred to as the sidewalk ordinance, prohibits a person who has received notice of violation from sitting or lying on a public sidewalk or on any object placed on a public sidewalk between 7 a.m. and 9 p.m. in downtown Seattle and Seattle neighborhood commercial areas.[1] Violation of this ordinance exposes the offender to a civil penalty of either a $50 fine or performance of community service. Refusal or failure to sign a notice of civil infraction or to respond to the notice constitutes a misdemeanor.[2] Exceptions to the prohibition against sitting on the sidewalk include circumstances involving medical emergencies; wheelchairs; sidewalk cafes, parades, rallies, demonstrations, performances or meetings for which street use permits have been issued; chairs or benches supplied by a public agency or abutting private property owner;

---

**1.** Section 15.48.040 of the Seattle Municipal Code provides as follows:

 A. Prohibition. No person, after having been notified by a law enforcement officer that he or she is in violation of the prohibition in this section, shall sit or lie down upon a public sidewalk, or upon a blanket, chair, stool, or any other object placed upon a public side-walk, during the hours between 7:00 a.m. and 9:00 p.m. in the following zones:

 1. The Downtown Zone, ...

 2. Neighborhood Commercial Zones....

**2.** The penalty for infraction of § 15.48.040 quoted above is set forth in SMC § 15.48.050.

and seats in bus zones occupied by people waiting for the bus.[3]

According to the statement of legislative intent adopted by the Public Safety Committee of the Seattle City Council which drafted the ordinance, the purpose of the ordinance was to facilitate the safe and efficient movement of pedestrians and goods on the public sidewalks of commercial areas. More specifically, the Seattle City Council's stated purposes underlying the ordinance were to eliminate the public safety hazard created by individuals sitting or lying on the sidewalks, and to protect the economic health and productivity of commercial areas. Declaration of Peter Clarke in Support of Defendant City of Seattle's Response to Plaintiff's Motion for Summary Judgment and City's Cross–Motion for Summary Judgment, Ex. C.[4]

Plaintiffs filed suit under 42 U.S.C. § 1983 challenging the constitutionality of the sidewalk ordinance on its face for denial of procedural and substantive due process, violation of the right to travel, violation of First Amendment rights to free expression, and denial of equal protection. The court will address each of plaintiffs' claims in turn.

### B. Legal Analysis

#### 1. Violation of Procedural Due Process Through Vagueness

■ In order to satisfy the Fourteenth Amendment guarantee of procedural due process, an ordinance must set forth clear legal standards so that citizens may know how to conduct themselves in conformity with the law, and law enforcement personnel

may avoid enforcing the law in an arbitrary and discriminatory manner. *Kolender v. Lawson,* 461 U.S. 352, 357–58, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Plaintiffs argue that the sidewalk ordinance meets neither prong of the test, and that it is, therefore, on its face unconstitutionally vague.

#### a. Notice to Law Enforcement

■ Regarding the failure to establish minimum guidelines for law enforcement personnel, plaintiffs argue that the sidewalk ordinance gives police unfettered discretion as to when to tell someone sitting on the sidewalk to move on. They point to the language of the ordinance which provides that "[n]o person, *after having been notified by a law enforcement officer that he or she is in violation of the prohibitions in this section,* shall sit or lie down upon a public sidewalk...." § 15.48.040 (emphasis supplied). Plaintiffs insist that pursuant to this language, lawful activity becomes a violation only when the police decide in their unbridled discretion to give notice of violation, but that the ordinance provides no standards for the exercise of that discretion.

Plaintiffs seek to draw an analogy between the sidewalk ordinance and statutes which were stricken down on procedural due grounds in cases like *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); and *Shuttlesworth v. City of Birmingham,* 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965). In *Shuttlesworth,* for example, petitioner had been charged with violating Birmingham city ordi-

---

**3.** The sidewalk ordinance was enacted by the Seattle City Council on October 4, 1993 and became effective on November 7, 1993. However, the City has agreed not to enforce the ordinance pending the court's ruling on the parties' cross-motions for summary judgment.

**4.** Plaintiffs have moved to strike various declarations and affidavits submitted by the City including the declaration of Peter Clarke and all attached exhibits and appendices. Regarding Exhibit C, the statement of legislative intent, to which the court refers in the body of this opinion, plaintiffs' motion is denied. This document is unquestionably a public record excluded from the hearsay rule pursuant to Fed.R.Evid. 803(8)(A).

As for much of the other evidence submitted by the City as part of the legislative record, including the transcript of a lengthy public hearing as well as letters to city council members, the court agrees with plaintiffs that it does not qualify as admissible evidence at trial. Nevertheless, even if such evidence cannot be admitted for the truth of the matter asserted, plaintiffs concede that the court can consider it as indicative of the public concerns generated by the issue and of the pressure brought to bear on the Seattle City Council to take action. Plaintiffs' Reply Memorandum in Support of Motion to Strike Evidence, p. 2. Since the court has not given any of defendants' proffered evidence more weight than plaintiffs concede is due, the court denies plaintiffs' motion to strike it from the record.

nances making it "unlawful for any person to stand or loiter upon any street or sidewalk of the city after having been requested by any police officer to move on." Noting that "[l]iterally read, ... this ordinance says that a person may stand on a public sidewalk in Birmingham only at the whim of any police officer," the United States Supreme Court concluded that "[t]he constitutional vice of so broad a provision needs no demonstration." 382 U.S. at 90, 86 S.Ct. at 213. However, the Court upheld the ordinance with a limiting construction that the accused had to be intentionally obstructing free passage.

In *Papachristou*, the United States Supreme Court struck down a vagrancy ordinance because there were "no standards governing the exercise of the discretion granted by the ordinance," thus "permit[ting] and encourag[ing] an arbitrary and discriminatory enforcement of the law." 405 U.S. at 170, 92 S.Ct. at 847. *See also, Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988) (statute forbidding congregation within 500 feet of foreign embassy and refusal to disperse upon police order upheld as constitutional by adopting limiting construction that police had to reasonably believe the existence of a threat to the security or peace of the embassy); *Seattle v. Webster*, 115 Wash.2d 635, 642–44, 802 P.2d 1333 (1990) (City of Seattle pedestrian interference ordinance held lawful because it provided citizens, police officers and courts with sufficient guidelines to prevent arbitrary enforcement); *Seattle v. Drew*, 70 Wash.2d 405, 406, 423 P.2d 522 (1967) (Seattle loitering ordinance making it a crime to be "wandering or loitering abroad," to be "abroad under other suspicious circumstances," and to "fail to give a satisfactory account of himself upon the demand of any police officer" held invalid for vagueness).

The court rejects plaintiffs' vagueness argument. Unlike the language of the ordinances and statutes found unconstitutional in the cases outlined above, the sidewalk ordinance very clearly describes the proscribed behavior, *i.e.*, sitting or lying down on the sidewalk in commercial districts between 7 a.m. and 9 p.m. except under certain specifically stated exceptions. Thus, unlike the laws considered in *Shuttlesworth, Papachristou* and similar cases, the ordinance does not leave police officers with unfettered discretion, and in fact gives them precise direction about what conduct is forbidden.

Plaintiffs' criticism focuses on the notification portion of the ordinance. But that portion does not invest a police officer with discretion to define the prohibited conduct; the ordinance itself defines what constitutes an infraction. The function of the notification requirement is simply to ensure that people have notice of the ordinance and an opportunity to comply with it before being cited. Since the police cannot cite an individual until he or she has been warned about the ordinance, the notification requirement operates to restrict police discretion rather than increasing police discretion to define the prohibited conduct.

Plaintiffs are correct in arguing that police officers have discretion in a particular instance to warn and cite an individual. But this is the same sort of enforcement discretion which law enforcement personnel have under any law, and does not render the ordinance unconstitutionally vague on its face. If police officers enforce the otherwise clear directives of the sidewalk ordinance in an arbitrary or discriminatory manner, then plaintiffs would certainly be justified in bringing a suit challenging the application of the ordinance. But that issue is not before the court at this time.

### b. Notice to Citizens

■ Plaintiffs also contend that the sidewalk ordinance is unconstitutionally vague on its face because it fails to give adequate notice to citizens of what activity constitutes a violation. Plaintiffs argue that persons of ordinary intelligence would not know whether they are sitting or lying down in a zone where such conduct is prohibited because the neighborhood commercial zones are not described with sufficient particularity. However, as discussed above, no person will be cited under the sidewalk ordinance without first receiving notice of the ordinance and an

opportunity to avoid citation.[5] Moreover, counsel for the City indicated at oral argument in this case that the City of Seattle was planning to place signs in the neighborhood commercial zones to provide additional notice to citizens of the areas covered by the sidewalk ordinance.

Plaintiffs further criticize the ordinance for its lack of specificity in failing to place any time element on the notice provision or to indicate whether a notice is space specific.[6] Certainly the ordinance does not address every conceivable question concerning the applicability and enforcement of the ordinance which could arise. But if this were the standard, few laws, if any, would pass constitutional muster. Plaintiffs' reproaches concern minor issues which do not go to the constitutionality of the statute on its face, but rather to the manner in which it is enforced.

*2. Violation of Substantive Due Process*

■ The due process clause of the Fourteenth Amendment protects against encroachment on substantive liberty interests as well as procedural rights. *See, e.g., Kelley v. Johnson,* 425 U.S. 238, 244, 96 S.Ct. 1440, 1444, 47 L.Ed.2d 708 (1976) (regarding the constitutionality of restrictions on hair length for police officers). Although substantive due process analysis has not flourished in recent years, plaintiffs make a brief argument that merely sitting on a sidewalk is an innocent activity which cannot be prohibited because targeting such behavior bears no rational relationship to a legitimate government interest. *Cf., De Weese v. Town of Palm Beach,* 812 F.2d 1365, 1366 (11th Cir. 1987) (city ordinance banning shirtless jogging held unconstitutional).

As discussed earlier in this opinion, the City of Seattle has proposed two reasons for prohibiting the behavior described in the sidewalk ordinance: ensuring pedestrian safety and safeguarding the economic vitality of commercial areas. The court finds that these are legitimate governmental interests which are rationally related to and advanced by the prohibitions set forth in the sidewalk ordinance.

*3. Violation of Right to Travel*

■ The right to travel is a fundamental federal constitutional right. Thus, regulations impeding or penalizing the right to travel must promote a compelling governmental interest in order to survive constitutional scrutiny. *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Attorney General of New York v. Soto–Lopez,* 476 U.S. 898, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986). Plaintiffs contend that the sidewalk ordinance impedes their ability to travel to and remain in the downtown and other commercial areas of Seattle, and that the City lacks any compelling reason for the broad prohibitions found in the sidewalk ordinance. Plaintiffs accordingly urge the court to hold that the sidewalk ordinance impermissibly infringes on their constitutional right to travel.

The court finds no merit in plaintiffs' argument. The right to travel cases involving durational residency requirements as a prerequisite to receiving public benefits and those involving other barriers to interstate travel are factually inapposite. *See, e.g., Shapiro, supra;* and *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974). Plaintiffs cite only two cases in which city ordinances aimed at street behavior have been held to infringe unconstitutionally on the right to travel. *Pottinger v. City of Miami,* 810

---

**5.** Contrary to plaintiffs' argument, the ordinance does set forth objective standards against which to measure a police directive. The ordinance itself describes the street boundaries of the downtown zone, while the neighborhood commercial zones are defined as areas zoned as Commercial 1(C1), Commercial 2(C2), Neighborhood Commercial 1(NC1), Neighborhood Commercial 2(NC2), Neighborhood Commercial 3(NC3).

**6.** For example, plaintiffs contend that the language of the ordinance does not address whether a person warned on Monday violates the ordinance by sitting in the same place the next day, the next week, or the next year. Plaintiffs also ask whether the notice only applies to a particular spot on the sidewalk. If a person given notice of violation then moves to another spot a few feet away, plaintiffs question whether new notice is required pursuant to the language of the ordinance.

F.Supp. 1551, 1578–83 (S.D.Fla.1992); *Tobe v. City of Santa Ana,* 22 Cal.App.4th 228, 27 Cal.Rptr.2d 386 (4th Dist.1994).

But both *Pottinger* and *Tobe* are distinguishable from the sidewalk ordinance involved in this case. In both of those cases, the city governments enacted sweeping ordinances imposing criminal liability for sleeping, lying down, eating and performing other life-sustaining activities in public places. These legislative initiatives followed on the heels of concerted action by the police to target the homeless, including mass arrests together with confiscation and destruction of their property. The *Pottinger* court found that plaintiffs had established the existence of a pattern and practice by the city of Miami of arresting homeless people for the purpose of driving them from public areas, 810 F.Supp. at 1554, 1561, and that the enforcement of the challenged ordinances "effectively bans homeless individuals from all public areas and denies them a single place where they can be without violating the law." *Id.* at 1581. *Pottinger* accordingly concluded that the ordinances unconstitutionally burdened homeless individuals' freedom of movement and ability to travel within the city. *Id.*

Likewise, in *Tobe,* the court found strong evidence that the City of Santa Ana sought to force homeless people out of the area by continually removing them from the places they frequented. In furtherance of this policy, the city enacted an ordinance prohibiting camping on any street or public area. The court concluded that the city's policy amounted to a war on the homeless which violated their constitutional right to travel into and remain in the city. *But compare, Seeley v. State,* 134 Ariz. 263, 655 P.2d 803, 808 (App. 1982), in which the court upheld a Phoenix ordinance forbidding lying, sleeping or sitting on a public street or right of way except in cases of medical emergency as not violating any constitutional right to travel.

The sidewalk ordinance before this court as well as the circumstances preceding and surrounding its enactment bear little similarity to the ordinances struck down in *Pottinger* and *Tobe.* For one thing, there is no legislative record underlying the enactment of the sidewalk ordinance or history of past practices indicating that the City of Seattle is motivated by a desire to expel homeless individuals from its commercial areas.

Moreover, the sidewalk ordinance does not impede migration into commercial areas by making it impossible for individuals to carry out essential activities in those areas. The ordinance only prohibits sitting or lying down on sidewalks from 7 a.m. to 9 p.m., and at no time forbids such activities in other public places in commercial districts such as parks, plazas and alleys. Because the ordinance leaves open numerous options of places to sit or lie down, it does not impair individuals' ability to come into commercial areas to take advantage of needed services.

The court further concludes that the City of Seattle's interests in protecting public safety by keeping the sidewalks clear of pedestrian hazards and in promoting the economic health of its commercial areas are substantial. *Cf., Pottinger,* 810 F.Supp. at 1581 (city has substantial interest in protecting aesthetically pleasing parks and streets, maintaining facilities in public areas, promoting tourism and business, and developing the downtown area); *Tobe, supra* (city has substantial interest in preserving the appearance and enabling the use of public facilities by citizens and visitors). The City of Seattle has made a legislative determination that this ordinance will help it to accomplish its goals. In the absence of any showing that the method it has selected intrudes on constitutionally protected activities, the sidewalk ordinance is a legitimate legislative determination.

### 4. Violation of First Amendment Rights

■ Plaintiffs contend that the sidewalk ordinance violates their rights to free speech guaranteed by the First Amendment because it chills and restricts their ability to engage in speech or expressive conduct. Plaintiffs' argument is not well-taken. As is evident from its plain language, the sidewalk ordinance only regulates the activities of sitting or lying on the sidewalk, which are pure physical conduct and do not in and of them-

selves contain an expressive element.[7]

It may be true that the plaintiffs plan to engage in speech or expressive conduct while they are seated or lying on the sidewalk. But the act of sitting or lying is not necessarily related or inextricably linked to the speech or expressive conduct. The homeless can still beg, the voter registrar can still register voters, and the political and other community groups can still solicit support without sitting or lying down as a necessary part of their communicative endeavors. While it might be more comfortable to sit or lie down while exercising their free speech rights, it is not essential to the communication of their message.[8]

Plaintiffs argue that the mere silent presence of an unkempt and disheveled person sitting or lying on a sidewalk can be expressive conduct protected by the First Amendment because it communicates a message about the person's need for assistance and society's failure or inability to address that need. But as the City points out, "[i]t is possible to find some kernel of expression in almost every activity a person undertakes ... such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *City of Dallas v. Stanglin*, 490 U.S. 19, 25, 109 S.Ct. 1591, 1595, 104 L.Ed.2d 18 (1989). Even though begging is a form of speech entitled to First Amendment protection, sitting or lying down is not inextricably intertwined with, or essential to, the protected expression. Plaintiffs' argument would require the conclusion that every public act by homeless people is expressive conduct protected under the First Amendment because they are by their very presence making a continuing social statement.

The court rejects this argument as not supported by First Amendment precedent.

### 5. Denial of Equal Protection

 Plaintiffs contend that the sidewalk ordinance violates the Fourteenth Amendment guarantee of equal protection by not treating all similarly situated persons alike. Government actions which discriminate on the basis of a suspect classification, or which infringe on constitutionally protected personal rights, are valid only if they serve a compelling state interest. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

As outlined above, plaintiffs have raised and the court has rejected the arguments that the sidewalk ordinance improperly restricts plaintiffs' fundamental rights to free speech, due process and travel. Thus, because plaintiffs have failed to demonstrate that the sidewalk ordinance infringes on any constitutionally protected rights, it follows that they have not established any equal protection violation resulting from such an infringement.

 Plaintiffs also assert that the ordinance violates the equal protection clause by blatantly targeting and discriminating against homeless people. Acknowledging that there is no precedent recognizing the homeless as a suspect class, plaintiffs contend that the equal protection clause bans blatantly discriminatory legislation even where no suspect classification or fundamental rights are affected. In support of this argument, plaintiffs cite *Parr v. Municipal Court*, 3 Cal.3d 861, 92 Cal.Rptr. 153, 479

---

7. Plaintiffs cite *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984), and *Brown v. Louisiana*, 383 U.S. 131, 141–42, 86 S.Ct. 719, 723–24, 15 L.Ed.2d 637 (1966), for the proposition that sitting or lying on a sidewalk can itself be expressive conduct protected by the First Amendment. The facts in those cases render them readily distinguishable. *Clark* involved sleeping in a public park in the context of a demonstration to publicize the plight of the homeless, while *Brown* addressed the issue of sitting silently in a public library to protest racial discrimination.

8. One plaintiff, a street musician named Jonny Hahn, may have a stronger case. He alleges that he cannot play his keyboard instrument without sitting down. As applied to him, the argument can be made that the ordinance restricts his free speech rights by making it extremely difficult or impossible to communicate his message. Assuming the validity of his complaint, the court declines to hold the entire ordinance constitutionally invalid on its face based on one isolated instance where sitting may be essential to expression. If the sidewalk ordinance as applied does interfere with Mr. Hahn's First Amendment rights, then he will be free to pursue his constitutional remedies at that time.

P.2d 353 (1971). *Parr* involved an ordinance passed by the City of Carmel-by-the-Sea making it illegal to sit on any sidewalks or to sit or lie on any public lawns. A declaration accompanying the legislation made it clear that the impetus for the law was the city's antagonism toward hippies and its desire to discourage their presence in Carmel. The court in *Parr* concluded that even though the legislative language was neutral, the hostile and discriminatory purpose of targeting hippies was clear. It went on to find such a purpose impermissible under the equal protection clause.

Based on the record in this case, the court finds no evidence that the Seattle City Council was targeting homeless people in a hostile and discriminatory fashion. Nor is there any evidence that the City Council acted under the influence of an improper motive. The targets of the sidewalk ordinance are those individuals who engage in certain conduct, namely sitting or lying on sidewalks in commercial areas during business hours. *Cf. Seattle v. Webster*, 115 Wash.2d 635, 802 P.2d 1333 (1990), *cert. denied,* 500 U.S. 908, 111 S.Ct. 1690, 114 L.Ed.2d 85 (1991), a case challenging the constitutionality of the Seattle pedestrian interference ordinance, which makes it a crime to intentionally obstruct pedestrian or vehicular traffic. In *Webster*, the Washington Supreme Court concluded that the ordinance did not violate equal protection guarantees by disparately affecting the homeless as a class. The Court held that the ordinance on its face applied equally to all persons, and that nothing in the ordinance referred to economic circumstances or residential status.[9]

■ Given that the sidewalk ordinance neither infringes on a constitutionally protected right nor discriminates against a suspect or protected class, the sidewalk ordinance must be upheld if the distinctions it draws are rationally related to a legitimate governmental interest. *Cleburne*, 473 U.S. at 446, 105 S.Ct. at 3257–58. Plaintiffs allege that the ordinance fails even this minimal scrutiny test because it is not rationally related to a legitimate governmental purpose. In this vein, plaintiffs first insist that there is no rational basis for discriminating between people sitting or lying down on a sidewalk and those occupying the same space by standing, squatting or parking a bicycle. This argument defies common sense. People who sit or lie down tend to do so for longer periods and to be more of an obstruction. The City Council could legitimately take note of the fact that nobody has been complaining about people standing or squatting outside of their business establishments.

Second, plaintiffs contend that the ordinance does not solve the problems faced by people with impaired vision who might injure themselves by tripping over sitting or prone individuals because there are so many other unregulated hazards to pedestrian travel on the sidewalks. But the City does not need to address all hazards of a similar nature in order to have a rational basis for passing legislation addressing a particular part of the perceived problem.

Third, plaintiffs argue that discrimination between sitters at a sidewalk cafe and sitters on the sidewalk is not rationally based on a legitimate government purpose in that both present an obstruction and a hazard to pedestrian safety. The City responds that sidewalk cafes are a rational exception because the abutting property owners can't use any other location for the use, because they contribute jobs and tax dollars in return for the opportunity to use the sidewalk, and because they contribute to public safety by maintaining the vitality of the urban area. The sidewalk sitter, according to the City, can just as well sit elsewhere and has no particular claim on a particular piece of sidewalk. The court concludes that the City has shown a rational basis for distinguishing between sidewalk cafe users and sidewalk sitters.

9. Plaintiffs briefly argue that homelessness should be deemed a suspect classification. The court declines to consider this issue because it finds no evidence that the sidewalk ordinance discriminates on its face against the homeless. *Cf., Seattle v. Webster*, 115 Wash.2d at 647, 656, 802 P.2d 1333 (court refused to address issue of the homeless as a protected class where the ordinance under review was facially neutral and nothing in the record supported such a declaration).

## III. THE AGGRESSIVE BEGGING ORDINANCE

### A. Background

This ordinance, originally enacted in 1987, makes criminal "aggressive begging" which is defined as follows: "to beg with the intent to intimidate another person into giving money or goods". SMC § 12A.12.015(A)(1). "To beg", according to the definitional section, is "to ask for money or goods as a charity, whether by words, bodily gestures, signs, or other means". SMC § 12A.12.015(A)(3). Two amendments to the ordinance were enacted in 1993. The first amendment added a definition of "intimidate" which reads as follows: "Intimidate means to engage in conduct which would make a reasonable person fearful or feel compelled." SMC § 12A.12.-015(A)(2).

A further amendment to the ordinance in 1993 added a list of "circumstances which may be considered in determining whether the actor intends to intimidate another person into giving money or goods" as follows: touching the person solicited; following the person solicited; directing profane or abusive language toward the person solicited; or persisting in begging after the person solicited has given a negative response. SMC § 12A.12.015(C).

Plaintiffs challenge the constitutionality of SMC § 12A.12.015 pursuant to the First and Fourteenth Amendments to the United States Constitution. They argue that the ordinance unconstitutionally prohibits speech which is protected under the First Amendment because it is (1) overbroad and (2) vague. The City contends that the ordinance does not prohibit protected speech or, in the alternative, any prohibition the ordinance does impose on protected speech is a reasonable time, place and manner restriction. Additionally, the City responds that the ordinance is not unconstitutionally vague because it is defined in straightforward terms and the circumstances provision provides additional guidance.

### B. Legal Analysis

#### 1. Begging as Protected Expression

The City does not dispute that peaceful begging, or solicitation for charitable purposes, is entitled to some First Amendment protection. See p. 33, Def's.Memo. on Summary Judgment. The United States Supreme Court held, in *Schaumburg v. Citizens for Better Environment,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980), that "solicitation to pay or contribute money" is "within the protections of the First Amendment." *Id.,* at 633, 100 S.Ct. at 834. *See also U.S. v. Kokinda,* 497 U.S. 720, 725, 110 S.Ct. 3115, 3118–19, 111 L.Ed.2d 571 (1990) ("Solicitation is a recognized form of speech protected by the First Amendment.").

In *Loper v. New York City Police Dept.,* 999 F.2d 699 (2nd Cir.1993), the Second Circuit "established that begging constitutes communicative activity of some sort", *id.,* at 704, stating that "[i]t cannot be gainsaid that begging implicates expressive conduct or communicative activity." *Id. See also Riley v. National Federation of Blind, Inc.,* 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) (solicitation is protected First Amendment activity); *Secretary of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (solicitation is protected First Amendment activity); *Blair v. Shanahan,* 775 F.Supp. 1315, 1322, 1324 (N.D.Cal.1991) (begging constitutes protected speech).

#### 2. Overbreadth Challenge to SMC §§ 12A.12.015(A), (B)

Plaintiffs contend that the language of this ordinance is unconstitutionally overbroad. A law is overbroad when it "does not aim specifically at evils within the allowable area of state control but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech". *Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1940). The test for determining overbreadth is whether the law on its face prohibits "a real and substantial amount of constitutionally protected conduct". *City of Seattle v. Ivan,* 71 Wash.App. 145, 150, 856 P.2d 1116 (1993), citing *Houston v. Hill,* 482 U.S. 451, 458, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398 (1987); *see also Broadrick v.*

*Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973) ("overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep").

The challenged Seattle ordinance does not prohibit all begging, as was the case in *Loper,* in which the statute prohibited begging throughout New York City. 999 F.2d at 702. Rather, the ordinance in question prohibits only begging "with the intent to intimidate another person into giving money or goods". SMC § 12A.12.015(A)(1). "Intimidate means to engage in conduct which would make a reasonable person fearful or feel compelled." SMC § 12A.12.015(A)(2). Thus, only begging which would make a person "fearful or feel compelled" is prohibited under the terms of the ordinance.

Additionally, the City has argued in its briefs that the speech proscribed by the ordinance is only that speech which equals a threat. *See* p. 35, Def's.Memo. on Summary Judgment ("The ordinance, by requiring the specific intent to intimidate is limited to conduct which threatens the person solicited"; "this court should not adopt a broad definition of 'compel,' but should limit it to its dictionary meaning, which equates it with a threat.").

The Ninth Circuit, in *Wurtz v. Risley,* 719 F.2d 1438 (9th Cir.1983), addressed the issue of First Amendment protection, or lack thereof, for threats in the context of an overbreadth challenge to a criminal intimidation statute. The Ninth Circuit stated the following concerning threats:

> It is true that threats have traditionally been punishable without violation of the first amendment, but implicit in the nature of such punishable threats is a reasonable tendency to produce in the victim a fear that the threat will be carried out.... What is a threat must be distinguished from what is constitutionally protected speech.

*Id.,* at 1441 (citations omitted).

In *Wurtz,* the language at issue made it a crime to "communicate to another a threat to ... commit any criminal offense". *Id.,* at 1439. The Ninth Circuit found this language

to be unconstitutionally overbroad. Although the petitioner's behavior—threatening to rape a woman—could be regulated under a narrowly drawn statute, the statute's language was void on its face for overbreadth. *id.,* at 1443. The statute was overbroad even though it was "confined to threats to 'commit any criminal offense' ", *id.,* at 1442, because it also applied to "minor crimes without victims" and "many relatively harmless expressions would come within its purview". *Id.* Additionally, the Ninth Circuit stated that "implicit in the nature of ... punishable threats is a reasonable tendency to produce in the victim a fear that the threat will be carried out." *Id.,* at 1441 (citation omitted). The court found that

> [t]he statutory language applies so broadly to threats of minor infractions, to threats not reasonably likely to induce a belief that they will be carried out, and to threats unrelated to any induced or threatened action, that a great deal of protected speech is brought within the statute.

*Id.* (footnote omitted).

The ordinance at issue here differs from the statute in *Wurtz* in two important respects. First, there is an intent requirement contained in SMC § 12A.12.015(A)(1), requiring that an "intent to intimidate" be present in order to constitute a violation of the ordinance. Additionally, SMC § 12A.12.015(A)(2) defines "intimidate" as conduct which "would make a reasonable person fearful or feel compelled". Thus, some of the difficulties of the statute in *Wurtz* are avoided.

However, plaintiffs argue that the language of the ordinance can be read to prohibit speech other than those threats unprotected by the First Amendment. The court can cure this overbreadth with a limiting construction. The City has repeatedly emphasized the court's duty to interpret the ordinance in a manner upholding its constitutionality. *See, e.g.,* p. 35, Def's.Memo. on Summary Judgment. As the Ninth Circuit stated in *Wurtz,* "[o]verbreadth may, of course, be cured by judicial or administrative construction that narrows a statute's application largely to behavior unprotected by the first amendment." 719 F.2d at 1442–43, citing

*Adamian v. Jacobsen,* 523 F.2d 929 (9th Cir.1975). "Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Broadrick v. Oklahoma,* 413 U.S. at 613, 93 S.Ct. at 2916. As the Supreme Court of Washington recently stated: "[a] statute or ordinance will be overturned [for overbreadth] only if the court is unable to place a sufficiently limiting construction" on the language of the ordinance. *Tacoma v. Luvene,* 118 Wash.2d 826, 840, 827 P.2d 1374 (1992). "A court may restrictively construe the statute in order to avoid constitutional impediments if the statute is amenable to a limiting construction." *City of Seattle v. Ivan,* 71 Wash.App. 145, 154, 856 P.2d 1116 (1993), citing *State v. Reyes,* 104 Wash.2d 35, 700 P.2d 1155 (1985). *See also State v. Talley,* 122 Wash.2d 192, 210, 858 P.2d 217 (1993) ("statute is void in its entirety for overbreadth only if it reaches a substantial amount of protected speech and there exists no way of severing the statute's unconstitutional applications").

The court construes the word "intimidate" to be limited, as the City suggests in its brief, "to conduct which threatens the person solicited" and the meaning of "compel" to be equal to "threat". *See* p. 35, Def's.Memo. on Summary Judgment. Additionally, the court limits the sweep of the ordinance to prohibit only those threats which would make a reasonable person fearful of harm to his or her person or property.

The ordinance, with the limits it contains and as construed by this court, does not reach speech protected by the First Amendment. *See, e.g., State v. Brown,* 50 Wash. App. 405, 411, 748 P.2d 276 (1988) (threat to cause bodily injury or physical damage to the property of another is not protected speech); *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942) ("fighting" words, words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace", are not protected speech); *United States v. Hutson,* 843

F.2d 1232, 1234–35 (9th Cir.1988) (extortionate threats are not protected); *Schenck v. United States,* 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470 (1919) (words that are calculated to produce immediate panic may not be protected speech).

Limiting the sweep of the ordinance to prohibit only those threats which would make a reasonable person fearful of harm to his or her person or property is an appropriate narrowing construction of the ordinance. Simply put, threats to cause bodily injury or physical damage to the property of another which would make a reasonable person fearful of such harm are not protected speech. Therefore the ordinance is sufficiently limited so as not to include protected speech and, as construed herein, is not unconstitutionally overbroad.[10]

*3. Vagueness Challenge to SMC §§ 12A.12.015(A), (B)*

As discussed in the preceding sections of this order, the court has construed SMC § 12A.12.015(A) and (B) in such a way that any potential overbreadth is cured. The straightforward, commonsense meaning of the language of the ordinance, combined with the court's limiting construction, eliminate any possible vagueness in those sections.

*4. SMC § 12A.12.015(C)—Circumstances Section*

The plaintiffs also challenge the section of the ordinance which sets out a list of "circumstances which may be considered in determining whether the actor intends to intimidate another person into giving money or goods". These circumstances include touching the person solicited, following the person solicited, directing profane or abusive language toward the person solicited, or persisting in begging after the person solicited has given a negative response. SMC § 12A.12.015(C). Plaintiffs assert that the circumstances section causes the ordinance to be both unconstitutionally overbroad and

---

**10.** Given the court's findings concerning the meaning of SMC § 12A.12.015(A) and (B), and the limitation of their applicability to unprotected speech, the court finds it unnecessary to consider whether the ordinance is an acceptable limitation of protected free speech in a public forum, thereby deserving heightened scrutiny, or is a reasonable time, place or manner restriction on protected speech.

vague. According to the City, the circumstances provision was added by the 1993 amendment as a result of the experience of the Seattle Police Department and the City Attorney in enforcing the original pedestrian interference ordinance. p. 32, Def's.Memo. on Summary Judgment. The City has argued that

> [w]hile the aggressive begging ordinance is not violated merely by engaging in one of the listed circumstances, the addition of a circumstances provision does assist beggars, potential solicitees, police officers, prosecutors, juries and judges by focussing on some types of behavior commonly associated with intimidating and threatening beggars.

*Id.* Additionally, the City has asserted that "[t]he listed circumstances are simply examples of acts or circumstances that typically constitute probative, admissible evidence that a fact-finder may find indicative of the defendant's intent to intimidate a person into giving money." p. 36, Def's.Reply Memo.

Given the court's construction of the ordinance as prohibiting only unprotected "threats", the court finds that the circumstances section creates difficulties of both overbreadth and vagueness. The court understands that the intention of the circumstances section was to be of assistance to concerned persons, be they subject to the ordinance or fact-finders determining whether or not the ordinance has been violated. However, given that some of the circumstances, in and of themselves, describe speech which is clearly protected by the First Amendment, and the lack of specificity in the definitions of the particular circumstances, the court finds that the ordinance will remain within constitutional limits only by striking the circumstances section.

This should in no way be interpreted as invalidating the ordinance as a whole. The Seattle Municipal Code contains a severability clause, found at SMC § 1.04.010.[11] The City itself has stated on numerous occasions, in its written briefs and during oral argument, that the amendment of the ordinance adding the circumstances section "effected no substantive change to the ordinance", but rather was indicative of the type of evidence which might be used to try to prove the intent of the alleged violator. pp. 32–33, Def's.Memo. on Summary Judgment. Striking the circumstances section does not impugn the validity of the remaining sections of the ordinance.

### IV. CONCLUSION

The sidewalk ordinance does not, on its face, violate the United States Constitution. The aggressive begging ordinance is not unconstitutionally overbroad or vague as construed by the court in this order. The court does, however, strike the circumstances section so as to limit the scope of the ordinance to constitutionally permissible bounds. For the above stated reasons, the court GRANTS the City's motion for summary judgment as to the constitutionality of the sidewalk and begging ordinances and DENIES plaintiffs' cross-motion for summary judgment.

11. SMC 1.04.010 reads as follows: "The provisions of this Code are declared to be separate and severable. The invalidity of any clause, sentence, paragraph, subdivision, section, chapter, title or other portion of this Code, or the invalidity of the application thereof to any person or circumstance shall not affect the validity of the remainder of this Code, or the validity of its application to other persons or circumstances."